IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CASSANDRA WILLIAMSON, | ) |
| Plaintiff, | ) |
| v. | ) 7:17-cv-1501-LSC |
| SULKIN, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

The Court has received Plaintiff Williamson's Complaint (doc. 1), motion for leave to proceed *in forma pauperis* (doc. 2), as well as her response (doc. 4) to the Court's show cause order (doc. 3). For the reasons stated below, Plaintiff's motion for leave to proceed *in forma pauperis* (doc. 2) is due to be granted and this action is due to be DISMISSED without PREJUDICE.

**I.     Facts**

Plaintiff is a transgender veteran living in Tuscaloosa, Alabama. Williamson alleges she has been harmed by the Department of Veteran Affairs' ("the VA") 2016 decision to forgo a proposed regulation change which would have reversed its official policy of not providing gender alterations as a medical service.

In Spring of 2016, the Department of Veterans Affairs proposed a rule change entitled "Removing Gender Alterations Restriction From the Medical Benefits Package" which would enable the VA to begin covering gender transition surgery for veterans. While the VA "currently provides many services for transgender veterans [including] hormone therapy, mental-health care, preoperative evaluation and long-term care following sex reassignment surgery," the Department has been barred from covering the total gender alteration procedure since 1999. (Doc. 4-1 at 5.) The proposed change was removed from the official fall 2016 Unified Agenda in November of 2016 due to budget constraints. *See id.* In an official statement, the VA indicated that it "has been and will continue to explore a regulatory change that would allow VA to perform gender alteration surgery…" and the proposed rule change would be delayed until such a time as "when appropriate funding [becomes] available." (Doc. 4-1 at 4.) Plaintiff appears to seek injunctive relief and requests that the Court "direct the VA to immediately reverse [the] harmful policy. . . ." (Doc. 4 at 3.)

II. **Plaintiff's Arguments**

Williamson argues that because the VA currently provides most transition-related medical care for transgender veterans who have been diagnosed with gender dysphoria, it should also provide and perform gender reassignment surgery.

Specifically, she avers "there is no rational justification to withhold or limit necessary or appropriate care for transgender veterans and service personnel," and that "by refusing the medically necessary care, as deemed necessary by her doctors, the VA is causing great and lasting harm to [her] health and well-being. . . ." (Doc. 1 at 5; Doc. 4 at 3.) She asks this Court to instruct the VA to either provide the complete medical care for transgender veterans, or if unprepared to provide these services in house, to provide coverage for the services. Though it is somewhat unclear, Williamson appears to argue that by providing gender reassignment surgery, transgender veteran care would be more holistic, and by enabling the VA to oversee and control all aspects of treatment would in turn precipitate a decrease in costs overall.

III. **Standard of Review**

Article III of the United States Constitution allows federal courts to only adjudicate "cases or controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997); U.S. Const. art. III, § 2 cl. 1 *et seq.* When assessing whether a claim is ripe for judicial review, courts must take both constitutional and prudential concerns into consideration. A claim for relief is not yet ripe for adjudication when it rests upon "contingent future events that may not occur as anticipated . . . ." *Thomas v.*

*Union Carbide*, 473 U.S. 568, 581 (1985). In *Abbott Laboratories v. Gardner*, the Supreme Court stated that the rationale of ripeness:

> is to prevent the courts, through avoidance of premature adjudication, *from entangling themselves in abstract disagreements over administrative policies*, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

387 U.S. 136, 148 (1967) (emphasis added) (*overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977)). Engaging in a "[s]trict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005) (citing *Digital*, 121 F.3d at 590). The ripeness determination "goes to whether the district court ha[s] subject matter jurisdiction to hear the case." *Digital*, 121 F.3d at 591 (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n. 7 (11th Cir.1989).

Because this action is due to be dismissed as not yet ripe, this Opinion does not reach whether the *pro se* Plaintiff has stated a claim or whether the action is frivolous under 28 U.S.C. § 1915(e)(2). *See* 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the

action is frivolous or malicious [or]. . . fails to state a claim on which relief may be granted.").

IV. Discussion

Williamson attempts to maintain this suit on her belief that the VA should have gone through with its proposed rule change removing the restriction which prevents the VA from performing gender reassignment surgery to veterans. Williamson avers the VA is denying her medically necessary care by refusing to provide her with total sex reassignment surgery. (Doc. 4-1 at 5.) However, the Department has not definitively precluded a rule change in the future. On the contrary, it has indicated it will only delay pursuit of such a change until funding is available. Consequently, Williamson's claims are unripe for review and action by this Court on this matter improper.

A 2011 executive order requires agencies to take costs into account when considering rule changes. *See* Exec. Order No. 13,563, 76 Fed. Reg. 3,821, 3,823 (Jan. 18, 2011) ("[E]ach agency must, among other things: (1) propose or adopt a regulation only upon a reasoned determination that its benefits justify its costs . . . [and] use the best available techniques to quantify anticipated present and future benefits and costs as accurately as possible.") (citing Exec. Order No. 12866 (Sept. 30, 1993)). The VA's reasoning for not moving forward with their proposed rule

change in 2016 appears to have been based upon the financial infeasibility of the change at present, and was in no way aimed to discriminate against or harm transgender individuals or veterans like Williamson by depriving them of necessary medical care. On the contrary, as shown in Williamson's complaint and attachments, she has received numerous consultations from the VA, her requests for a referral to a psychologist have been honored and the VA has provided her with the care and treatment it is authorized to provide. *See* 38 C.F.R. § 17.38 (c)(4) (VA medical benefits packages available to veterans expressly "does not include . . . gender alterations.").

The possibility that the VA will include a similar rule change in its next Unified Agenda, whether funding will become available to make such a change, and whether such a change will be approved and ultimately put into effect, are each contingent upon one another and are altogether tenuous. Thus, Williamson's claim for relief is based upon "contingent future events that may not occur as anticipated. . ."and is not ripe for review. The tenuous nature of these claims "counsel" in favor of an exercise of "judicial restraint" in this matter. *See Digital*, 121 F.3d at 589 (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n. 12 (D.C.Cir.1986)).

No final agency decision has been reached regarding the possible future policy change. Consequently, granting review of this matter would improperly involve this Court in "disagreements over [Department of Veteran Affairs] administrative policies," which would result in a failure to "protect the agenc[y] from judicial interference until an administrative decision has been formalized . . . ." *Abbott Labs.*, 387 U.S. at 148. The withdrawal of a proposed rule change is not "a binding conclusive administrative decision" therefore, "no tangible controversy exists and, thus, [this Court] ha[s] no authority to act." *Digital*, 121 F.3d at 590 (citing *Hallandale*, 922 F.2d at 762–63).

## V. Conclusion

"[I]t is clear that an unripe claim, like a claim outside this court's jurisdictional ambit, must be dismissed without prejudice." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1350 (Fed. Cir. 2015). Because Williamson does not present an actual case or controversy that is ripe for judicial review, her claims are due to be DISMISSED without PREJUDICE. Additionally, her Motion for Leave to Proceed *in forma pauperis* is due to be granted.

**DONE** and **ORDERED** on October 13, 2017.

_____
L. Scott Coogler
United States District Judge

190685